698 A.2d 43

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Robert LARK, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 21, 1997.

Decided July 23, 1997.

444

Thomas C. Zielinski, Peter G. Rossi, Philadelphia, for appellant.

Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

This is an appeal from the denial of a PCRA petition in a death penalty case. On June 28, 1985, Lark was convicted of first degree murder, possession of an instrument of crime, terroristic threats, and kidnapping. On April 24, 1986, he was formally sentenced to death on the murder conviction and various terms of imprisonment on the other convictions. He appealed the conviction and the judgment of sentence to this court, and on May 17, 1988, we affirmed. On August 19, 1994, the Governor of Pennsylvania signed the warrant for Lark's execution, and Lark then petitioned for collateral review. On July 21, 1995 the Court of Common Pleas of Philadelphia–Criminal Division (the PCRA court) heard argument to determine "whether or not there is [an] evidentiary hearing necessary on the PCRA petition." N.T. 7/21/95, 2. After argument, the court took the case under advisement and ultimately

dismissed the petition without hearing on September 12, 1995. Lark appeals the denial of the PCRA petition.

The facts underlying this case are that in late 1978, Lark robbed Tae Bong Cho while putting a gun to the head of the victim's infant child. He was apprehended shortly after the robbery and was charged with the crime. Approximately two months later, Lark murdered Mr. Cho in order to prevent him from testifying against Lark in the robbery trial. No witness was able to identify the killer, because he wore a ski mask. However, Lark bragged to a number of acquaintances that he had killed "the Korean."

Lark failed to appear for trial on the robbery charge and he was convicted in absentia. Thereafter, Lark repeatedly threatened the prosecutor in the robbery case and detectives investigating the Cho homicide. He was captured on January 9, 1980 after he took a mother and her two small children hostage. While he was barricaded inside the hostage's house, he told police: "I'll kill you all like that [*expletive*].... I'll shoot you in the legs."

Following capture, Lark was charged with offenses related to the murder of Mr. Cho, terroristic threats against the prosecutor in the robbery case, and the kidnapping of the woman and her two children. The first trial ended in mistrial as the result of an inadvertent question asked by the trial court, and after a second trial in June, 1985, as stated above, Lark was convicted of murder of the first degree and the other offenses.

In the present collateral proceeding, Lark alleges nineteen separate matters as bases for relief from the conviction and sentence of death. Some of these matters are couched in terms of ineffectiveness of trial counsel; others in terms of error of the trial court.

We recently summarized the requirements for PCRA relief as follows:

To be eligible for PCRA relief, Appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated

errors or defects found in section 9543(a)(2) and that his issues have not been previously litigated. An issue is deemed finally litigated for purposes of the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). If the allegations of error have not been finally litigated, Appellant must also demonstrate that those allegations of error have not been waived or that, if waived, either the conditions listed in section 9543(a)(3)(ii) or (iii) are met. 42 Pa.C.S. § 9543(a)(3). An issue is deemed waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, [or] on appeal ..." 42 Pa.C.S. § 9544(b). Finally, Appellant must demonstrate that the failure to litigate the issue prior to, or during trial, or on direct appeal could not have resulted from any reasonable tactical decision of counsel. 42 Pa.C.S. § 9543(a)(4).

*Commonwealth v. Banks*, 540 Pa. 143, 148–49, 656 A.2d 467, 469–70 (1995) (footnotes omitted).[1]

1. The version of the Post Conviction Relief Act applicable to this case provides that in order to be eligible for relief, the petitioner must plead and prove by a preponderance of evidence:

 (2) That the conviction or sentence resulted from one or more of the following:
 (i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
 (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
 (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.
 (iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
 (v) A violation of the provisions of the Constitution, laws or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.

 Three of Lark's claims, (numbers 7, 9 and 12) have been previously litigated.[2] Claim 7 is that the trial court erred in admitting the statement of Michael Johnson; claim 12 is that the Commonwealth improperly presented false evidence (the testimony of Michael Johnson);[3] and claim 9 is that prosecution was barred because of double jeopardy. The first two claims were adjudicated on direct appeal to this court; the third was adjudicated on direct appeal to the Superior Court. Since the claims have been previously litigated, they are not, therefore, eligible for review under the PCRA. See 42 Pa.C.S. § 9543(a)(3). *Commonwealth v. Lark*, 518 Pa. 290, 311–12, 543 A.2d 491, 501 (1988), *Commonwealth v. Lark*, 330 Pa.Super. 225, 479 A.2d 522 (1984).

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

(4) That the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel.

42 Pa.C.S. § 9543(a)(2)—(4).

2. An issue is previously litigated if "the highest court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2).

3. Although Lark has not before presented the precise claims he makes here, he earlier claimed that the statement of one Michael Johnson was erroneously admitted into evidence. On direct appeal, we determined that the statement was properly before the jury. Since the statement was properly before the jury, it was not erroneously admitted and the Commonwealth cannot have been engaged in misconduct in presenting it.

Next, three claims are waived (numbers 6, 8, and 11).[4] Nonetheless, it has been this court's custom to address such claims in death penalty cases, *Commonwealth v. Banks,* 540 Pa. 143, 149 n. 7, 656 A.2d 467, 470 n. 7 (1995). Because all of these matters are raised again, however, in the context of ineffectiveness of counsel claims, we decline to address them here because they will be addressed below in the ineffectiveness context.

Next, Lark alleges ten instances of ineffectiveness of counsel. In *Commonwealth v. Douglas,* 537 Pa. 588, 597, 645 A.2d 226, 230 (1994) we defined ineffectiveness of counsel as follows: the defendant must show (1) there is merit to the underlying claim; (2) counsel had no reasonable basis for his course of conduct; and (3) there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different.[5]

■ The first ineffectiveness claim is that counsel improperly failed to "death qualify and life qualify" the jury and unreasonably consented to the Commonwealth's challenge for cause of jurors who expressed concern about imposing the death sentence.

**4.** The claims are: (6) the trial court failed to properly death qualify and life qualify the jury; (8) the trial court improperly refused to answer the jury's request to explain the death penalty and its consequences; and (11) instructions to the jury and the verdict slip improperly indicated the jury had to unanimously find any mitigating circumstances before it could give effect to that circumstance in its sentencing decision.

**5.** Mr Justice Cappy, in a dissenting opinion joined by this author in *Commonwealth v. Buehl,* 540 Pa. 493, 516 fn. 1, 658 A.2d 771, 783 (1995), expresses the view that although the PCRA adds that the alleged ineffectiveness of counsel must also have "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," this statutory provision does not impose requirements additional to those stated above, for to hold otherwise would violate the Sixth Amendment's guarantee of effective assistance of counsel. We do not address the propriety of this view in this case because all of the claims presented by Lark fail either because there is no merit to the underlying claim, or there was a reasonable basis for counsel's conduct, or there is no reasonable probability that the outcome of the trial would have been different but for counsel's act or omission.

■ With respect to the failure to "life qualify" the jury (i.e., the ability of the jury to impose a life sentence in an appropriate case), as we have stated in *Commonwealth v. Blount*, 538 Pa. 156, 164–65, 647 A.2d 199, 204 (1994), although a court may not refuse to allow life-qualifying questions, there is no requirement that such questions be asked. Here, Lark argues that because there was no reasonable alternative to life qualifying the jury, Lark was "obviously prejudiced." Because life-qualifying questions are not required and because Lark offers no rationale for this claim except that they should have been asked, his argument is insufficient to demonstrate prejudice.

■ With respect to counsel's failure to death qualify jurors and object to the Commonwealth's challenge for cause jurors who expressed concern about imposing the death sentence, the applicable rule is that whenever a juror's views on capital punishment "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," he is properly excluded from the jury. *Commonwealth v. Jasper*, 531 Pa. 1, 8, 610 A.2d 949, 952 (1992) citing *Commonwealth v. Peterkin*, 511 Pa. 299, 513 A.2d 373 (1986). Lark raises objection to the exclusion of six jurors. We have carefully reviewed the record, and find no error either in the questions asked jurors about their willingness to impose the death penalty or in counsel's failure to object to the disqualification of jurors who expressed concern about imposing the death penalty. Of the jurors who Lark claims were wrongly excluded from the jury, one juror expressed a fixed opinion against the death penalty; another stated that making a death penalty decision would be too much of an emotional strain; another said she could not in conscience vote for the death penalty; another that he was nervous in even thinking about imposing the death penalty; another that it would be an emotional strain to consider imposing the death penalty; and another that he was opposed to the death penalty as a matter of principle. It was not error for defense counsel to fail to attempt to rehabilitate these jurors, for it is unlikely that they could have been rehabilitat-

ed; it is uncertain whether the court would have even permitted such an attempt, *Commonwealth v. Jasper*, 531 Pa. at 8–9, 610 A.2d at 953 (1992); and it is also unlikely that the court would have credited any claims of impartiality from these jurors even if rehabilitation had been attempted. There was no ineffectiveness of counsel in this regard.[6]

Next, Lark claims that trial counsel was ineffective in failing to object to the admission of evidence which established that Lark carried his gun in the back waistband of his pants. N.T. 7/21/95, p. 17. As stated earlier, the admissibility of this evidence, testimony by one Michael Johnson, has been finally litigated and found to have been properly admitted. *Commonwealth v. Lark*, 518 Pa. at 311–12, 543 A.2d at 501. Since counsel will not be found ineffective for failing to object to the admission of admissible evidence, the claim is without merit.

Lark's next claim is that counsel was ineffective in failing to call witnesses to testify in Lark's behalf, even though these witnesses would have given exculpatory testimony.

In order to establish ineffectiveness in failing to call witnesses,

[t]he existence and availability of the witness must be shown, as well as counsel's actual awareness of, or duty to know of the witness; the witness' willingness and ability to cooperate and appear on the defendant's behalf; and the necessity for the proposed testimony in order to avoid prejudice.

*Commonwealth v. Stanley*, 534 Pa. 297, 300, 632 A.2d 871, 872 (1993). Lark presented no affidavits concerning the proposed

---

**6.** This claim also includes the assertion of ineffectiveness in failing to object to the court's failure to ask two jurors their views on the death penalty. As this court stated in *Commonwealth v. Carpenter*, 533 Pa. 40, 617 A.2d 1263 (1992), the purpose of voir dire is to empanel a fair jury which will apply the law as instructed by the trial court. *Here as in Carpenter*, the jurors indicated on the record that they were willing to follow the court's instructions. Moreover, the jury in this case deliberated over a two day period and asked questions of the trial court on two occasions. It is apparent that the jury deliberated before reaching a verdict and did not reach its conclusion automatically. Counsel was not derelict in failing to object to the panel.

testimony of Sharon Lewis or Linda Timbers, their availability to testify at the time of trial, or the substance of their proposed testimony. He did present an affidavit for Cassandra Green, but among other infirmities in the affidavit, Green's proposed testimony, that Lark habitually carried a gun in a shoulder holster, not in his waistband, is cumulative, and, therefore, not helpful to Lark. Two Commonwealth witnesses testified to the same thing. Finally, Lark presented the affidavit of one Michael Floyd, who states that he would have testified, if he had been called, that Lark was in North Carolina in August, 1979. The import of this testimony is that it purportedly rebuts the testimony of a Commonwealth witness that Lark, while in Philadelphia in August, 1979, confessed that he killed Mr. Cho. It was not error to fail to call Floyd, for his proposed testimony does not preclude the possibility that although Lark was in North Carolina during part of August, 1979, he returned to Philadelphia at some point during that month. In sum, Lark has not demonstrated that he was prejudiced by trial counsel's failure to call the witnesses whose affidavits he has offered.

Next, Lark asserts two claims based on the Double Jeopardy Clause. First, he claims that counsel was ineffective in failing to offer a motion to dismiss remaining charges after Lark pled guilty to the charge of possessing instruments of crime; and he was also ineffective in failing to appeal to this court the Superior Court's affirmance of the lower court's denial of his motion to dismiss on double jeopardy grounds.

As to the first of these claims, Lark pled guilty to the charge of possessing an instrument of crime. However, the record indicates that the plea was never accepted by the court, no colloquy was ever conducted, the Commonwealth did not proceed with this charge at Lark's first or second trials, the jury was not charged on this crime, and the Commonwealth nolle prossed the charge on April 24, 1986, at formal sentencing. Jeopardy did not attach since the court did not accept the plea, *Commonwealth v. Rosario*, 545 Pa. 4, 7, 679 A.2d 756, 758 fn. 1 (1996), and there was, therefore, no ineffective-

ness in failing to raise the claim that the purported guilty plea prevented further prosecution.

The basis for the second double jeopardy allegation is that the trial court inadvertently asked a Commonwealth witness a question which elicited an answer suggesting that Lark was the suspect in another crime. Upon motion of defense counsel, the court declared a mistrial. Defense counsel then moved to dismiss the charges based upon a claim of double jeopardy. The trial court denied the motion to dismiss, and Lark took an interlocutory appeal to the Superior Court. The Superior Court, in a well-reasoned opinion, affirmed. *Commonwealth v. Lark*, 330 Pa.Super. 225, 479 A.2d 522 (1984). In *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980), this court held that where a defendant requests a mistrial, double jeopardy does not bar retrial unless there is judicial or prosecutorial misconduct amounting to over-reaching. It is plain from an examination of the record that the court's question was not an attempt to provoke a mistrial or to prejudice or harass the defendant. There was, therefore, no basis for barring prosecution at a second trial because of double jeopardy, and there was no ineffectiveness of counsel because of failure to appeal the Superior Court's decision.

Next, Lark claims that defense counsel was ineffective in failing to request an instruction on second degree murder. The evidence, as summarized by Lark, was that an assailant entered the store which was operated by Mr. Cho, walked to the counter area and shot Mr. Cho, then left the store. From this evidence, Lark argues that an inference could be drawn that the murderer intended to rob the store. The claim is frivolous on its face. Where the record does not include any evidence of a lesser included offense of homicide, no instruction on the lesser included offense is required. *Commonwealth v. Williams*, 490 Pa. 187, 190, 415 A.2d 403, 404 (1980). There is no evidence in the case that the murder was committed in the course of a robbery, and there was, therefore, no ineffectiveness of counsel in failing to request a jury instruction on second degree murder.

■ Next, Lark argues that counsel was ineffective in failing to request the trial court to instruct the jury properly regarding the standard for finding the existence of mitigating circumstances. In particular, Lark asserts that the instructions imply that the jury must unanimously find one or more mitigating circumstances before the mitigating circumstance may be set off against any aggravating circumstance. The claim is meritless. The complained-of instructions simply quote the sentencing code and state, in pertinent part:

The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection D and no mitigating circumstances or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.

The verdict must be a sentence of life imprisonment in all other cases.

N.T. 6/28/85, p. 15. See 42 Pa.C.S. § 9711(c)(1)(iv). In *Commonwealth v. Frey,* 520 Pa. 338, 346–48, 554 A.2d 27, 31 (1989), this court held that jury instructions following the language of 42 Pa.C.S. § 9711(c)(1)(iv) did not imply that any mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict. Counsel was not ineffective, therefore, in failing to object to the instructions, for the instructions were not defective.

■ Lark's next contention is that counsel was ineffective in failing to object to the trial court's refusal to answer the jury's request for an explanation of the term "life sentence." During deliberations, the jury asked: "Please explain the death penalty and its consequences in the State of Pennsylvania." The court stated: "I am not permitted to answer the question which is a question of fact. I can only explain to you questions of law. So in other words, I have to refuse to answer that. The jury is directed to return to the jury room and continue your deliberations." N.T. 6/29/85, pp. 9–10.

Lark relies on *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), for the proposition that

the jury should have been told what a "life sentence" means in Pennsylvania; and on *Commonwealth v. Baker*, 511 Pa. 1, 511 A.2d 777 (1986) for the proposition that the jury should have been told that if the death penalty is to be imposed, it is their responsibility.

Both of these claims are meritless. *Simmons* does not apply to this case because it was decided after Lark's trial, and this court has determined that *Simmons* may not be given retroactive application. *Commonwealth v. Christy*, 540 Pa. 192, 656 A.2d 877 (1995). Even if *Simmons* were applicable, however, the claim would fail, for in *Simmons* the prosecution raised the defendant's future dangerousness as a sentencing factor, whereas in this case, future dangerousness was not raised at all; and in *Simmons* the jury requested a definition of the term "life sentence," whereas in this case, the jury asked for the meaning of the death penalty. *Simmons* is distinguishable on the facts and is, therefore, inapplicable. Furthermore, if the court had answered the question, Lark would not have benefitted by the answer, for the court presumably would have stated that if a death penalty were imposed, commutation is possible.

Lark's claim that in failing to answer the jury's inquiry as to the meaning of a death sentence, the court erred in diminishing the jury's responsibility for imposing a sentence of death in violation of *Commonwealth v. Baker, supra*, is, likewise, without merit. The day before the jury made its inquiry, the court clearly instructed the jury on this point:

> The jury will determine whether the defendant shall be sentenced to death or life imprisonment.

N.T. 6/28/95, p. 14, and:

> After hearing all of the evidence and receiving these instructions from the court, the jury shall deliberate and render a sentencing verdict. In rendering the sentencing verdict, if the sentence is death, the jury shall set forth as a form designated by the court—that's the form you are holding—and set forth the findings upon which the sentence is based.

N.T. 6/28/95, p. 20. The jury was properly instructed on its responsibility in rendering a sentence. Counsel was not ineffective, therefore, in failing to object to the court's response to the jury's inquiry.

Lark's next claim is that counsel was ineffective in failing to investigate, obtain, and offer evidence of mitigating circumstances. As a part of this claim, Lark also asserts that counsel was ineffective in not properly preparing for the sentencing phase of the trial. Lark also claims that the trial court erred in not conducting a colloquy to determine whether the defendant had chosen not to submit evidence of mitigation in violation of *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987). Finally, Lark asserts that it was error to deny his motion to sever and in allowing evidence of other crimes.

Lark's claim that counsel was ineffective in failing to investigate, obtain, and offer evidence of mitigating circumstances fails for several reasons. An examination of the record indicates that counsel vigorously defended his client throughout a three week trial. Second, counsel offered the affidavit of Lark's mother, which was stipulated to by the state. Third, Lark fails to state which witnesses, apart from himself, his mother and the clinical psychologist who examined Lark, should have been called or what they would have said. As to his own testimony, Lark also fails to state how he would have responded to cross examination on his extensive criminal record. His claim that his mother was not called is in error, since her testimony was received by way of stipulation. In this stipulation, Mrs. Lark testified as to Lark's childhood history, the death of his father and brother, his time spent in foster care, and that he has a wife and three children. As to the clinical psychologist, Lark fails to explain how the testimony of the psychologist would have helped him. The affidavit of the psychologist described Lark's childhood and describes him as having a negative self image and as a person who failed to develop internal controls over his feelings and emotions. Part of the psychologist's testimony would have been cumulative with Lark's mother's stipulation. The balance of the

psychologist's testimony, that Lark was a disturbed personality who lacked self-control, is not self-evidently helpful to Lark, for it appears that Lark addressed the problem of his lack of self-control and low self-esteem by engaging in a life of crime and the injuring of others.

In sum, it is inaccurate to say that defense counsel presented no evidence in mitigation, for the stipulation of Mrs. Lark was introduced. It is also inaccurate to say that defense counsel failed to investigate and prepare the case, for even now, except for the psychologist, Lark is unable to state what any witnesses would say or how their proposed testimony would be helpful, were they to testify. The psychologist's proposed testimony is cumulative and otherwise unhelpful. There was, therefore, no ineffectiveness of counsel as claimed.[7]

Next, Lark claims that counsel was ineffective in failing to consult and obtain a psychiatric expert to provide evidence of mitigation concerning his mental and emotional state. There was no ineffectiveness. The affidavit of the psychologist that Lark now submits, which presumably reflects what the psychologist would have testified if he had been called, we have determined above, is either cumulative or unhelpful in its assessment of Lark's mental state.

Finally, Lark claims that it was error for the PCRA court to dismiss his petition; that the court erred in failing to give him the required ten-day disposition without hearing notice mandated by Pa.R.Crim.P. 1507(a); and that it was a violation of due process to fail to hold an evidentiary hearing on whether trial counsel was ineffective.

7. Lark's claim that it was error for the trial court not to conduct an in-chambers colloquy in order to determine that he chose not to submit evidence of mitigation is waived. It is, in addition, without merit, since *Commonwealth v. Crawley*, 514 Pa. 539, 526 A.2d 334 (1987), which requires such a colloquy, is applied prospectively, and is, therefore, inapplicable to the trial in this case. Finally, the claim that the court erred in failing to grant the motion to sever and in allowing evidence of other crimes is without merit, for that claim has been finally litigated on direct appeal to this court.

It was Lark's burden to offer to prove facts which would have entitled him to relief. As the previous discussion has demonstrated, he failed to meet this burden, and the PCRA court correctly determined that there were no factual matters to be resolved and that Lark's offers of proof were inadequate to raise any claim upon which relief could be granted. It was proper, therefore, to dismiss the petition, and, since oral argument had been heard on the matter of whether a hearing was required, no notice was required pursuant to Rule 1507(a). See *Commonwealth v. Banks*, 540 Pa. 143, 155–57, 656 A.2d 467, 472–74 (1995).

For these reasons, the order of the trial court denying relief under the Post Conviction Relief Act is affirmed.

CASTILLE, J., did not participate in the consideration or decision of this case.

CAPPY, J., concurs in the result.