656 A.2d 467

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**George BANKS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 1, 1994.

Decided March 27, 1995.

144

146

Albert J. Flora, Wilkes–Barre, for Banks.

Peter Paul Olszewski, Scott C. Gartley, Wilkes–Barre, Robert A. Graci, Chief Deputy Atty. Gen., for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

CAPPY, Justice.

This is a direct appeal from an Order of the trial court denying post-conviction relief in a death penalty case.[1] For the following reasons, we affirm the Order of the trial court.

On June 22, 1983, Appellant, George Banks, was convicted by a jury of twelve counts of murder of the first degree. He was also convicted of one count of murder of the third degree, attempted murder, aggravated assault, recklessly endangering another person, robbery and theft of a motor vehicle.[2] Following a penalty hearing, appellant was sentenced to death on each of the twelve counts of first degree murder.[3] On direct appeal, this Court affirmed the convictions and judgments of sentence. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 211, 98 L.Ed.2d

---

1. 42 Pa.C.S. § 9546(d) provides that a final order disposing of a defendant's post-conviction petition shall be directly appealable to this Court in a death penalty case. *See also*, 42 Pa.C.S. § 722.

2. During the early morning of September 25, 1982, Appellant shot fourteen (14) people with a Colt AR–15 semi-automatic rifle, killing thirteen (13) and wounding one. The entire rampage lasted no more than one hour. The majority of the victims were women with whom appellant had been involved as well as the children borne of those relationships. A more detailed account of the facts surrounding appellant's convictions is set forth in this Court's decision on direct appeal from the judgments of sentence of death. *See Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

3. In addition to the twelve sentences of death, Appellant was sentenced to consecutive terms of ten to twenty years for the third degree murder conviction, five to ten years for the attempted murder conviction and ten to twenty for the robbery conviction.

148

162 (1987). In February, 1989, appellant filed the instant petition for post-conviction relief. The trial court denied that collateral relief petition on September 8, 1993.[4]

 To be eligible for PCRA relief, Appellant must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in section 9543(a)(2) and that his issues have not been previously litigated.[5] An issue is deemed finally litigated for purposes of the PCRA if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42

4. Although Appellant purportedly filed his petition under the Post Conviction Hearing Act ("PCHA"), we note that the same was filed after the effective date of the new Post Conviction Relief Act ("PCRA"). As such, Appellant's collateral relief petition must be reviewed under the standards set forth in the PCRA and not those of PCHA. 42 Pa.C.S. § 9542.

5. Section 9543 of the PCRA provides, in pertinent part:
(a) **General rule.**—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:
(2) That the conviction or sentence resulted from one or more of the following:
(i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.
(iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
(v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.
(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.
(vii) The imposition of a sentence greater than the lawful maximum.
(viii) A proceeding in a tribunal without jurisdiction.

Pa.C.S. § 9544(a)(2). If the allegations of error have not been finally litigated, Appellant must also demonstrate that those allegations of error have not been waived or that, if waived, either the conditions listed in section 9543(a)(3)(ii) or (iii) are met.[6] 42 Pa.C.S. § 9543(a)(3). An issue is deemed waived "if the petitioner failed to raise it and if it could have been raised before the trial, at the trial, [or] on appeal ..." 42 Pa.C.S. § 9544(b). Finally, Appellant must demonstrate that the failure to litigate the issue prior to, or during trial, or on direct appeal could not have resulted from any reasonable tactical decision of counsel. 42 Pa.C.S. § 9543(a)(4).[7]

Appellant first contends that the jury instructions, jury poll and the verdict slip employed during the penalty phase suggested to the jury that its findings as to mitigating circumstances must be unanimous and as such violated the United States Supreme Court's mandate in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Appellant argues further that in order to comply with *Mills*, a trial court should be required to specifically instruct the jury that unanimity is not required as to findings of mitigating circumstances. Both of these contentions are without merit.

6. *Section 9543(a)(3) provides:*
 That the allegation of error has not been previously litigated and one of the following applies:
 (i) The allegation of error has not been waived;
 (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.
 (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

7. The Commonwealth contends that all of the issues raised in Appellant's post-conviction petition are waived for failure to raise those issues on direct appeal. While we agree that some of the issues presented could have been raised on direct appeal and thus, could be deemed waived under the PCRA, we will nevertheless address all of Appellant's claims since the trial court addressed all of those claims and since it is this Court's practice to address all issues arising in a death penalty case irrespective of a finding of waiver. *Commonwealth v. DeHart*, 539 Pa. 5, 650 A.2d 38 (1994).

In *Mills,* the United States Supreme Court vacated the sentence of death and remanded for further proceedings, finding that the jury instructions and the verdict slip employed during the penalty phase of Mills' trial created a substantial risk that the jurors would be misled to believe that unless each of them agreed as to the existence of a particular mitigating circumstance, that mitigating circumstance could not be considered in rendering its sentence. In so holding, the Court in *Mills* emphasized that the sentencer must be permitted to consider all mitigating evidence. *Id.* at 384, 108 S.Ct. at 1870, 100 L.Ed.2d at 400. Neither the jury instructions, the jury poll nor the verdict slips in the instant matter contained language which would violate the dictates of *Mills.*

■ During the penalty phase of the trial, the trial court instructed the jury as follows:

> The sentence you impose will depend upon your findings concerning aggravating and mitigating circumstances. The Crime[s] Code in this Commonwealth provides that the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstance or circumstances.
>
> The verdict must be a sentence of life imprisonment in all other cases.

(N.T. June 20, 1983, Vol. VI, p. 2315). This instruction, which mirrors the language found in the death penalty statute of our Sentencing Code, has previously been reviewed by this Court and determined not to violate *Mills. Commonwealth v. Hackett,* 534 Pa. 210, 627 A.2d 719 (1993); *Commonwealth v. Marshall,* 534 Pa. 488, 633 A.2d 1100 (1993); *Commonwealth v. O'Shea,* 523 Pa. 384, 567 A.2d 1023 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 180 (1990). Accordingly, appellant's claim with respect to the instruction is without merit.

■ Similarly, Appellant's claim with respect to the verdict slips is also without merit. The form of verdict slip employed

in the instant matter was virtually identical to that considered by this Court in *Commonwealth v. Frey,* 520 Pa. 338, 554 A.2d 27 (1989), *cert. denied,* 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990), and determined not to infer to the jury a requirement of unanimity with respect to mitigating circumstances. As such, Appellant's claim that the verdict slip form submitted to the jury in the instant matter impermissibly suggested to the jury that it must find mitigating circumstances by unanimous vote is unfounded.

■ Nor do the answers provided by the individual jurors during the poll suggest in any manner that they believed unanimity was required in finding mitigating circumstances. In response to defense counsel's request for a jury poll, the trial court in the instant matter stated as follows:

Ladies and gentlemen, counsel has asked for a poll. You will recall that simply means you will be called upon to rise and respond whether your verdict was, in each of the twelve cases, life or death.

The Foreman has indicated, as has been publicly read, that the decision of death was based upon your finding one or more aggravating circumstances which outweighs any mitigating circumstance. He further indicated that the aggravating circumstance was No. 3; the mitigating circumstance was No. 1.

I will call upon each of you individually. I will ask you to rise and indicate whether your verdict in each case, what it was, and whether or not you agreed with the statement made by the Foreman that you found one aggravating circumstance as noted, one mitigating circumstance as noted, and that the aggravating circumstance outweighed the mitigating.

(N.T. p. 2332). The trial court then asked Juror No. 1 what her verdict was with respect to the first of the twelve death penalty convictions to which she responded "Death." In response to the court's further questions, Juror No. 1 responded that her verdict was based on her finding of one or more aggravating circumstances that outweighed any mitigating

circumstances; that the aggravating circumstance found by her was "No. 3," (referring to the sequential order of those circumstances as listed on the actual verdict slips); and that she found mitigating circumstance "No. 1." [8] The trial court then proceeded to ask Juror No. 1 what her sentence was with respect to each of the remaining eleven death penalty cases to which she responded "death" and whether her sentence of death thereon was based upon the same criteria as the first matter to which she responded in the affirmative. The trial court then polled the remaining jurors, asking each of them whether their sentence of death was based on the same criteria. It appears to be Appellant's contention that since the jurors were not specifically polled on each mitigating circumstance presented but not checked on the verdict slip, an inference may be drawn that the jurors were impermissibly prohibited from considering all relevant mitigating factors. We do not agree. Appellant cites this Court's decision in *Commonwealth v. Young*, 524 Pa. 373, 572 A.2d 1217 (1990), in support of his position. *Young*, however, is distinguishable.

In *Young*, the verdict sheet contained explicit instructions that the mitigating circumstances be unanimously found and, upon questioning from the trial court, the foreman therein stated that the jury had "unanimously" found two particular mitigating circumstances but had not come to any conclusion with respect to a third mitigating circumstance. This Court there held that although a proper jury instruction had been given by the trial judge, the incorrect verdict sheet together with the jury foreman's response demanded that the matter be remanded for resentencing since it could not be determined whether the jury disregarded the proper instructions as a result of the improper verdict sheet. In the instant matter,

8. The particular aggravating circumstance was 42 Pa.C.S. § 9711(d)(10), the defendant has been convicted of another Federal or State offense committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense. The particular mitigating circumstance referred to by Juror No. 1 was 42 Pa.C.S. § 9711(e)(2), the defendant was under the influence of extreme mental or emotional disturbance.

the jury was never provided with either an incorrect instruction or incorrect verdict slip. As discussed above, both the verbal instructions given by the court as well as the instructions printed on the verdict slips were correct and not impermissibly suggestive of a unanimity requirement with respect to mitigating circumstances. Nor is there anything in the trial court's questions nor the jurors' responses during the polling that would indicate that they believed they had to find mitigating circumstances unanimously. In sum, neither the instructions of the court nor the printed instructions on the verdict slips nor the questions and responses of the court and jury during polling, standing alone or viewed in total, infer a requirement of unanimity which would violate the dictates of *Mills*.

Moreover, we do not agree with Appellant that a specific charge explicitly informing the jury that it need not find mitigating circumstances by unanimous vote is required. Our decision in *Commonwealth v. Hackett, supra,* 534 Pa. 210, 627 A.2d 719, makes clear that so long as proper instructions are given by the trial court, there is no requirement that the court specifically charge the jury that it need not be unanimous in finding mitigating circumstances. *Hackett,* 534 Pa. at 222–223, 627 A.2d at 725.[9]

Accordingly, for all these reasons, Appellant's claim that his sentencing procedures violated *Mills* was properly denied by the PCRA court.

Appellant next contends that the sentencing procedures in effect at the time of his sentencing were ambiguous and not uniformly applied in Pennsylvania, and thus violative of the Eighth and Fourteenth Amendments of the United States Constitution. Appellant premises his argument on a report of the Pennsylvania Criminal Procedural Rules Committee which

9. Appellant seems to imply that the adoption of Pa.R.Crim.P. 358A, which became effective July 1, 1989, evinces the impropriety of not specifically instructing the jury on the issue of unanimity as to mitigating circumstances. As this Court recently noted in *Commonwealth v. Tilley,* 528 Pa. 125, 143 n. 11, 595 A.2d 575, 583 n. 11 (1991), the purpose of Rule 358A is simply to provide statewide uniform sentencing verdict slips in death penalty cases and in no way suggests that the prior procedures employed in Pennsylvania were improper.

allegedly delineated several procedural flaws with respect to the death penalty together with the fact that subsequent to his sentencing, Rule 358A of the Pennsylvania Rules of Criminal Procedure was adopted. Appellant seems to contend that the adoption of Rule 358A, although occurring after the imposition of his sentences, somehow evinces that the procedures in place at the time he was sentenced were constitutionally deficient.[10]

■ While Appellant sets forth five specific alleged deficiencies, he fails to argue that any one or more of those alleged deficiencies actually occurred in his case. Instead, he seems to simply be arguing that because the Criminal Procedure Rules Committee believed these issues to be worthy of concern, then *any* death penalty sentence imposed prior to the amendments in 1989 is not constitutionally sound. This argument is ludicrous. Section 9543(a)(2) of the PCRA clearly provides that in order to obtain post-conviction relief, a defendant is required to plead and prove that his conviction or sentence resulted from one or more of the errors or defects enumerated in the Act. Clearly, Appellant has not met this burden. Moreover, as noted in footnote 6, *supra*, this Court in *Commonwealth v. Tilley* noted that the adoption of Rule 358A of the Rules of Criminal Procedure does not suggest the procedure employed prior thereto was constitutionally deficient. Finally, the fact that the Rules Committee may have determined that supplemental rules needed to be implemented, does not, alone, establish that the prior rules and procedures were unconstitutional. Accordingly, Appellant was properly denied post-conviction relief on this issue.

Appellant next contends that he was denied due process of the law by the trial court's alleged failure to follow Pa.

10. Appellant contends that the PCRA court failed to address this issue thereby hampering our appellate review of the issue. The Commonwealth submits, however, that the issue was addressed by the PCRA court exactly in the manner in which Appellant raised and briefed the same below. In pertinent part, the court below concluded that the adoption of Rule 358A did not render the procedures employed prior thereto improper. Even assuming the court did not address Appellant's precise argument, our review thereof is not affected insofar as his claim relates solely to an issue of law and not one dependent upon missing facts as Appellant seems to suggest.

R.Crim.P. 1507 and 1508.[11] More specifically, Appellant ar-

11. Rule 1507 provides:

(a) The judge shall promptly review the motion, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the motion and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 10 days of the date of the notice. The judge thereafter shall either order the motion dismissed, or grant leave to file an amended motion, or direct that the proceedings continue.

(b) A motion for post-conviction collateral relief may be granted without a hearing when the motion and answer show that there is no genuine issue concerning any material fact and that the defendant is entitled to relief as a matter of law.

(c) The judge may dispose of only part of a motion without a hearing by ordering dismissal of or granting relief on only some of the issues raised, while ordering a hearing on other issues.

(d) When the motion is dismissed without a hearing, the judge:

(1) shall issue an order to that effect and shall state in the order the grounds on which the case was determined; and

(2) shall advise the defendant by certified mail, return receipt requested, of the right to appeal from the final order disposing of the motion and of the time within which the appeal must be taken.

Rule 1508 provides:

(a) Except as provided in Rule 1507, the judge shall order a hearing on all material issues of fact raised by the motion and answer, if any. The judge may deny a hearing on a specific issue of fact when a full and fair evidentiary hearing upon that issue was held at trial or at any proceeding before or after trial. The judge shall schedule the hearing for a time that will afford the parties a reasonable opportunity for investigation and preparation, and shall enter such interim orders as may be necessary in the interests of justice.

(b) The judge, on motion or request, shall postpone or continue a hearing to provide either party a reasonable opportunity, if one did not exist previously, for investigation and preparation regarding any new issue of fact raised in an amended motion or amended answer.

(c) The judge shall permit the defendant to appear in person at the hearing and shall provide the defendant an opportunity to have counsel.

(d) Upon the conclusion of the hearing the judge shall:

(1) determine all material issues raised by the motion, if any;

(2) issue an order denying relief or granting a specific form of relief and stating the grounds on which the case was determined, and issue any supplementary orders appropriate to the proper disposition of the case; and

(3) state on the record, or issue and serve upon the parties, findings of fact and conclusions of law on all material issues.

gues that the trial court never gave the requisite notice of its intent to dismiss the petition nor did it afford Appellant an opportunity to respond to the court's apparent intent to dismiss. Appellant's contention is, again, unfounded.

The clear intent behind Rules 1507 and 1508 was to assure that an evidentiary hearing be held on a post-conviction petition where there are factual issues to be resolved. Where, however, the issues raised in a petition involve no disputed factual issues, a hearing thereon is clearly not necessary and a resolution thereof without such a hearing does not violate the rules. Further, under Rule 1507(a), notice of a court's intention to dismiss is required only where the trial court, after review of the petition, any answer by the Commonwealth thereto, and any other matters of record, determines that a hearing is not necessary, that the petitioner is not entitled to post-conviction relief *and that no further proceedings are necessary.* Unequivocally, the purpose of such notice is to afford the petitioner an opportunity to respond as to why dismissal would be inappropriate. Here, however, the trial court, upon review of the petition and answer thereto, was not required to provide notice as it simply was not its intention to then dismiss the petition. While it is true that the trial court did not hold an evidentiary hearing on this matter, it appears that both Appellant and the Commonwealth agreed that the issues presented involved no factual disputes but only issues of law.[12] Appellant does not dispute that he had notice of the trial court's intention *not* to hold an evidentiary hearing.

(e) If the judge disposes of the case in open court at the conclusion of the hearing, the judge shall advise the defendant on the record of the right to appeal from the final order disposing of the motion and of the time within which the appeal must be taken. If the case is taken under advisement, the judge shall advise the defendant of the right to appeal by certified mail, return receipt requested.

**12.** By Order dated December 4, 1992, the trial court scheduled oral argument on the petition, noting that it found that the petition raised no material issues of fact. It appears from the record that briefs by both Appellant and the Commonwealth had been filed prior to the date of this Order. It also appears, that following the entry of this December 4, 1992 Order, the parties agreed to submit the issues on briefs rather than proceed to oral argument.

Surely, had he disagreed with the court's conclusion in this respect, he would have responded in an appropriate manner. Indeed, no where does he argue that there are issues of fact that must be determined. In sum, the trial court's manner of disposition of Appellant's Post–Conviction Petition did not violate Rules 1507 and 1508.

Next, Appellant contends that our proportionality review as provided for in 42 Pa.C.S. § 9711(h)(3)(iii) and as conducted pursuant to this Court's decision in *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984), *cert. denied* 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), denied him procedural due process under the Fourteenth Amendment to the United States Constitution. It is Appellant's contention that because a defendant is not provided any opportunity to contest the accuracy of the information being gathered by the Administrative Office of Pennsylvania Courts ("AOPC") and relied upon by this Court in carrying out its statutorily mandated proportionality review, he is denied due process. This due process claim is premised upon Appellant's argument that because the proportionality review impacts upon sentencing, it is a critical stage of the criminal proceedings to which due process rights of confrontation and cross-examination attach. Appellant's claim is without merit for several reasons.

First, as the trial court accurately noted, proportionality review is not an adversarial part of the trial or sentencing procedures in a death penalty case. Indeed, it is not even a sentencing proceeding at all. Rather, it is an appellate process designed to assure that a sentence of death imposed in a particular case is not disproportionate to the penalty imposed in similar cases. Moreover, a similar claim has previously been rejected by this Court in *Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987), *remanded on other grounds,* 539 Pa. 5, 650 A.2d 38 (1994). There, we stated:

> Appellant next argues that the death penalty statute is defective in that it provides the defense with no funds or

administrative assistance to determine if the proportionality review required pursuant to 42 Pa.C.S. § 9711(h)(3)(iii) is adequately performed. Appellant's concern with the manner in which this Court reviews the proportionality of sentences in capital cases is unwarranted. In *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700, *cert. denied*, 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984), we ordered the performance of an ongoing comprehensive study of all cases in which the defendant was convicted of first degree murder since the effective date of the present death penalty statute. For each such case, information has been compiled concerning the age, race and sex of the defendant and the victim, whether the death penalty was sought, the aggravating and mitigating circumstances presented and the evidence relating thereto, the sentence imposed, related charges and the disposition thereof, and data concerning any co-defendants. This study entitled "Pennsylvania Death Penalty Study," is maintained by the Administrative Office of Pennsylvania Courts and is made available by that office free of charge. Thus there is no barrier to access to the information upon which this Court bases its decision as to proportionality. Absent some definitive criticism of the adequacy and/or the accuracy of the information supplied by this source, the instant argument is without merit.

*Id.* 512 Pa. at 259–260, 516 A.2d at 669. Appellant, similar to the defendant in *DeHart*, has failed to point to any actual deficiencies and/or inaccuracies in the relevant information supplied by the AOPC. Moreover, Appellant makes no claim that he requested and was denied access to the information compiled by the AOPC or that he was in any manner precluded from conducting his own investigation as to the accuracy of that information. As such, Appellant is not entitled to post-conviction relief as to this issue.

Finally, Appellant contends that the trial court abused its discretion in permitting Appellant to testify and cross-examine certain witnesses and thereby denied Appellant effective assis-

tance of counsel. While somewhat convoluted, the crux of Appellant's argument is that the trial court erred in permitting him to assist in his own defense.

During the guilt phase of trial, counsel for Appellant informed the court that Appellant wished to testify against the advice of counsel. Accordingly, the trial court conducted an extensive colloquy explaining in great detail the rights Appellant would be foregoing if he testified and most importantly, the prejudicial effect his own admission of evidence may have on his case. During the colloquy it was clear that Appellant wished to present his theory of conspiracy[13] and that in so doing he intended to introduce photographs of some of the corpses thereby opening the door for the Commonwealth to introduce additional photographs previously deemed to be inadmissible as too prejudicial.[14] The trial court explained to Appellant that it previously ruled similar photographs inadmissible so as to prevent Appellant from being prejudiced thereby and that if Appellant, himself, chose to admit photographs of the victims, he would likely suffer prejudice as a result thereof. Appellant indicated his clear understanding of the trial court's instructions as well as the consequences of his acknowledged strategy. Accordingly, the trial court permitted him to testify. Appellant now contends that the trial court's ruling was in error and that the effect of that ruling was to deprive his counsel of actual control over the proceedings and thus, deny him "his right to effective assistance of counsel." (Brief of Appellant, p. 24). While disguised as a claim of ineffectiveness, we discern no such claim in Appel-

**13.** As this Court noted in our opinion on direct appeal in this matter, Appellant believed that the police officers, the Mayor of Wilkes–Barre, the District Attorney's office and perhaps the court were conspiring against him by concealing and altering evidence, shooting some of the victims, rearranging some of the corpses and covering up some of their wounds, and obstructing Appellant's attempts to expose the "conspiracy." *See Commonwealth v. Banks*, 513 Pa. at 336, 521 A.2d at 10.

**14.** During a pre-trial suppression hearing, the trial court ruled that the Commonwealth would not be permitted to introduce photographs of the corpses.

lant's argument.[15] No where does Appellant contend that his trial counsel were ineffective; rather he argues that the trial court, by its ruling, denied him effective assistance of counsel. In essence, what Appellant here argues is that the admission of the gruesome photographs and the cross-examination of witnesses during which Appellant used some of those photographs was so prejudicial that the court should not have permitted same, irrespective of Appellant's unwavering insistence on admitting those photographs and cross-examining those witnesses.

The issue of the admission of the photographs was raised by Appellant on direct appeal and addressed by this Court in its prior opinion in this matter. *Commonwealth v. Banks*, 513 Pa. at 348–349, 521 A.2d at 16–17. As such, that issue has been finally litigated and Appellant is not entitled to PCRA relief thereon. 42 Pa.C.S. § 9544(a)(2). However, again, given the serious nature of the matters before us, we will proceed to address Appellant's claim.

The law is clear that a defendant has a constitutional right to present his own defense at trial. *Commonwealth v. Bryant*, 524 Pa. 564, 574 A.2d 590 (1990). A defendant may also be permitted to act as co-counsel even though he has counsel available, but that determination lies within the sound discretion of the trial court. *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986). Based upon our review of the record, we are satisfied that the trial court here did not abuse its discretion in permitting appellant to assist in his defense. First, our review of the record reveals that Appellant knowingly and intelligently waived his right against self-incrimination. The record demonstrates that Appellant was fully informed and indicated his understanding of the risks inherent in his participation in his own defense. In addition, this Court previously reviewed the competency determinations of the trial court, including those rendered at the

15. At page 22 of his brief, Appellant complains that the trial court incorrectly addressed a "competency" claim rather than an ineffective assistance of counsel claim.

time Appellant chose to testify, and concluded that lower court did not err in finding Appellant competent. *Commonwealth v. Banks,* 513 Pa. at 336–344, 521 A.2d at 10–14. Appellant's final claim was, thus, properly denied by the trial court.

For all the foregoing reasons, the order of the Court of Common Pleas of Luzerne County is affirmed.[16]

NIX, C.J., files a concurring opinion.

MONTEMURO, J., is sitting by designation.

NIX, Chief Justice, concurring.

On direct appeal, I dissented on the basis that the trial judge failed to ensure that Banks made a knowing and intelligent waiver of his right to counsel by permitting him to introduce prejudicially inflammatory pictures. I continue to adhere to this view; however, I am constrained to recognize that this issue has been finally litigated and is not subject to collateral attack in its present posture. *See* 42 Pa.C.S. § 9544(a)(2).

---

**16.** The Prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).