**Raymond WHITNEY**

v.

**Martin HORN, Commissioner of Pennsylvania Department of Corrections, et al.**

No. 99–1993.

United States District Court, E.D. Pennsylvania.

June 7, 2000.

Robert Brett Dunham, Philadelphia, PA, Christina Swarns, Philadelphia, PA, Billy H. Nolas, Philadelphia, PA, for petitioner.

Thomas W. Dolgenos, District Attorney's Office, Philadelphia, PA, Donna G. Zucker, Philadelphia, PA, Marilyn F. Murray, District Attorney of Philadelphia, Philadelphia, PA, for respondents.

## MEMORANDUM

BARTLE, District Judge.

This is a death penalty case. Petitioner Raymond Whitney ("Whitney") seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. He contends that he is entitled to a new trial and/or a new sentencing hearing because of numerous violations of his constitutional rights.

The gruesome events out of which this case arises are described in great detail by the Pennsylvania Supreme Court in its opinion in *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1154–55 (1986). Suffice it to say that in the early morning hours October 10, 1981, Whitney broke into the West Philadelphia apartment of Jehad Taha and his wife and stabbed Mr. Taha to death during a robbery. The decedent was stabbed 28 times. Whitney also tried to rape Jehad Taha's wife. On May 4, 1982, he was convicted of first degree murder and sentenced to death by a jury in the Court of Common Pleas of Philadelphia County.[1] The Pennsylvania Supreme Court sustained his conviction and sentence on July 15, 1986. *See id.* at 1162.

On November 13, 1990, Whitney filed in the Court of Common Pleas of Philadel-

---

1. Petitioner also was convicted of two counts of burglary, two counts of robbery, two counts of possession of an instrument of crime, terroristic threats, indecent assault, and attempted rape. *See Whitney*, 512 A.2d at 1153–54.

phia County a pro se petition seeking post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons.Stat. Ann. §§ 9501, *et seq.* After the PCRA court stayed his execution and appointed counsel, he filed amended petitions on March 8, 1991, September 23, 1991, December 17, 1991, and June 4, 1992. The PCRA court held an evidentiary hearing in February, 1993, and on January 3, 1995, the court denied post-conviction relief. Over three years later, on February 26, 1998, the Pennsylvania Supreme Court again affirmed. *See Commonwealth v. Whitney,* 550 Pa. 618, 708 A.2d 471 (1998). In April, 1999, Governor Ridge signed a warrant for his execution to take place on June 3, 1999.

On April 22, 1999, we granted Whitney a stay of execution and appointed counsel to represent him in the case at bar. He thereupon filed his petition for a writ of habeas corpus in this court under 28 U.S.C. § 2254. After respondents argued that this court must dismiss the petition because it contained both exhausted and unexhausted claims, Whitney filed an amended petition that omitted the one claim he could still pursue in state court and set forth seventeen other claims and sub-claims of alleged violations of the United States Constitution during both the guilt and penalty phases of his trial.

It is undisputed that Whitney has no remaining avenue in the courts of Pennsylvania for litigating any of the claims he has alleged in his amended petition for a writ of habeas corpus. In addition, it is conceded that Whitney did not pursue, either on direct appeal or in his PCRA proceeding, a number of the claims alleged in his pending petition. He and respondents sharply disagree about whether he is now precluded from raising those claims here.

I.

The federal habeas corpus statute permits this court to entertain a petition for a writ of habeas corpus by a state prisoner only on the ground that he or she is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a). The statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, further provides:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Section 2254(c) states, "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." Whitney contends that he has no available state court remedies and thus may proceed with his claims for relief here.

The Supreme Court first announced the exhaustion doctrine, now codified at § 2254(b)(1), in *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). It is a doctrine of comity designed to reduce friction between the federal and state courts by giving the latter the first opportunity to grant relief because of any violation of federal law. *See Coleman v. Thompson,* 501 U.S. 722, 731–32, 111 S.Ct.

2546, 115 L.Ed.2d 640 (1991). As Justice Stevens has explained, "This time-honored rule [of exhaustion] has developed over several decades of cases, always with the goal of respecting the States' interest in passing first on their prisoners' constitutional claims in order to act as the primary guarantor of those prisoners' federal rights . . . ." *O'Sullivan,* 526 U.S. at 851, 119 S.Ct. 1728 (dissenting).[2]

■ The exhaustion doctrine requires us to ask whether the prisoner had any state remedy available to him at the time he filed his federal habeas petition. *See id.* It "refers only to remedies still available at the time of the federal petition," not to those that were available to a prisoner at some time prior to the filing of his federal petition. *Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also id.* at 853, 119 S.Ct. 1728 (Stevens, J., dissenting). If a prisoner does have an available state remedy, then "in the interest of comity, [we] must generally abstain from intervening," and he will be required to return to the state courts. *O'Sullivan,* 526 U.S. at 851, 119 S.Ct. 1728 (Stevens, J., dissenting). On the other hand, if he has no available state remedy when his federal petition is filed, we must determine whether he has "properly exhausted" his state remedies. *Id.* at 848, 119 S.Ct. 1728.

■ Proper exhaustion occurs when a petitioner "has fairly presented his claims to the state courts," *id.,* and given them "a sufficient opportunity to decide those claims," *id.* at 853, 119 S.Ct. 1728 (Stevens, J., dissenting). If a prisoner had an op-

portunity fairly to present his claims to the state courts but has failed to do so, and now a state procedural rule acts as a bar, we may not consider those claims because he has not properly exhausted his state remedies. He has waived or procedurally defaulted such claims. *See Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); *id.* at 854, 119 S.Ct. 1728 (Stevens, J., dissenting).

■ Procedural default prevents our review of a prisoner's federal claims if they were defaulted under a state procedural rule that is an "independent and adequate state ground" for the state courts' refusal to address the merits.[3] *Coleman,* 501 U.S. at 729, 111 S.Ct. 2546. The state courts' reason for not addressing petitioner's federal claims is "independent" if it is separate and apart from the federal issues. *See id.* at 732, 111 S.Ct. 2546; *Cabrera v. Barbo,* 175 F.3d 307, 312 (3d Cir.), *cert. denied,* 528 U.S. 886, 120 S.Ct. 205, 145 L.Ed.2d 173 (1999). It is undisputed that 42 Pa. Cons.Stat. Ann. § 9545(b)(1), which contains time limitations for filing PCRA petitions, now prevents Whitney from obtaining any relief in the state courts and is independent of any federal issues.

## II.

It is the adequacy of the time bar that is pivotal in this case. Whitney maintains that the time restriction found in 42 Pa. Cons.Stat. Ann. § 9545(b)(1), as applied to him, is not an adequate state ground to deny him relief. If he is correct, we may proceed to reach the merits of his claims because "there is an absence of available

---

2. Although Justice Stevens dissented, the majority noted that it agreed with his "general description of the law of exhaustion and procedural default" and in particular "his description of the interplay of these two doctrines." *O'Sullivan,* 526 U.S. at 848, 119 S.Ct. 1728.

3. There are several other exceptions to the exhaustion doctrine bar, but we need only reach this one.

State corrective process," and procedural default is excused. 28 U.S.C. § 2254(b)(1)(B)(i); *see also Lines v. Larkins,* 208 F.3d 153, 159–60 (3d Cir.2000).

■ To be adequate, a state procedural rule must "speak in unmistakable terms." *Cabrera v. Barbo,* 175 F.3d 307, 313 (3d Cir.), *cert. denied,*528 U.S. 886, 120 S.Ct. 205, 145 L.Ed.2d 173 (1999); *see also Doctor v. Walters,* 96 F.3d 675, 683–84 (3d Cir.1996). Furthermore, "the procedural disposition must comport with similar decisions in other cases so there is a firmly established rule that is applied in a consistent and regular manner in the vast majority of the cases." *Cabrera,* 175 F.3d at 313. "[T]hese conditions must have existed at the time of the state court procedural default." *Id.* Fairness is the issue. As our Court of Appeals has explained, "The reason for these requirements is that a petitioner should be on notice of how to present his claims in the state courts if his failure to present them is to bar him from advancing them in a federal court." *Id.*

■ In Pennsylvania, PCRA review is the *"sole* means" for collaterally challenging one's conviction and sentence. *Commonwealth v. Ahlborn,* 548 Pa. 544, 699 A.2d 718, 721 (1997). As we noted above, Whitney filed his first and only petition for PCRA relief on November 13, 1990. The PCRA at that time, before the 1996 amendments, provided:

(a) General rule.—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

. . . .

(3) That the allegation of error has not been previously litigated and one of the following applies:

(i) The allegation of error has not been waived.

(ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

(iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

42 . Pa. Cons.Stat. Ann. § 9543(a)(3) (amended 1996). The pre–1996 version of § 9544 provided:

(a) Previous litigation.—For the purpose of this subchapter, an issue has been previously litigated if:

(1) it has been raised in the trial court, the trial court has ruled on the merits of the issue and the petitioner did not appeal;

(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or

(3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

(b) Issues waived.—For the purposes of this subchapter, an issue is waived if the petitioner failed to raise it and if it could have been raised before the trial at the trial, on appeal, in a habeas corpus proceeding or other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.

42 Pa. Cons.Stat. Ann. § 9544(a) and (b) (amended 1996). Up until January 16, 1996, Pennsylvania law allowed a prisoner to file, without time limits, successive petitions for post-conviction relief. *See Commonwealth v. Peterkin,* 554 Pa. 547, 722 A.2d 638, 642 (1998); *see also Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352 (1995) (involving a second petition for post-conviction relief); *Commonwealth v. Waddy,* 497 Pa. 449, 441 A.2d 1224 (1982)

(involving a third petition); *Commonwealth v. Yount*, 419 Pa.Super. 613, 615 A.2d 1316 (1992) (involving a third petition). Despite the prohibition in § 9543(a)(3) against raising waived claims in PCRA petitions, it was the Pennsylvania Supreme Court's practice "to address all issues arising in a death penalty case, irrespective of a finding of waiver ." *Travaglia*, 661 A.2d at 356 n. 6; *see also Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467, 470 n. 7 (1995). This relaxed waiver rule allowed petitioners in capital cases to raise, and the Pennsylvania Supreme Court to reach, the merits of waived claims.[4]

A new day arrived in the Commonwealth on January 16, 1996, when the November 17, 1995 amendments to the PCRA became effective. Among other things, the General Assembly added a sentence to the PCRA which read, "Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases." 42 Pa. Cons.Stat. Ann. § 9542. The amended statute also requires that any PCRA petition, "including a second or subsequent petition," must be filed within one year of the date the "judgment" becomes final. *Id.* § 9545(b)(1). This amendment applies to all petitions filed after January 16, 1996, with certain exceptions not relevant here.[5] Significantly, it also contains a proviso that any petitioner whose judgment became final on or before January 16, 1996 is deemed to have filed a timely petition if and only if his or her *first* petition was filed by January 16, 1997. *See* Act of Nov. 17, 1995 (Special Session No. 1), 1995 Pa. Laws 1118, No. 32; *Peterkin*, 722 A.2d at 641.

Whitney's judgment became final on or about October 15, 1986, when the time expired for him to seek review by the United States Supreme Court of the July 15, 1986 decision of the Pennsylvania Supreme Court. *See* 42 Pa. Cons.Stat. Ann. § 9545(b)(3); 28 U.S.C. § 2101(d); Sup.Ct. R. 13. Unfortunately for him, he was unable to avail himself of the one-year grace period for prisoners whose judgments had already become final by January 16, 1996 because he had already filed his first PCRA petition by that time. *See Peterkin*, 722 A.2d at 643; *Commonwealth v. Alcorn*, 703 A.2d 1054, 1057 (Pa.Super.1997), *appeal denied*, 555 Pa. 711, 724 A.2d 348 (1998). The amended PCRA makes no provision for the filing of a second petition later than one year after a judgment became final. *See Commonwealth v. Cross*, 555 Pa. 603, 726 A.2d 333, 335 n. 2 (1999). When petitioner filed his habeas corpus petition in this court in May, 1999, a second PCRA petition would have been futile due to the time bar found at 42 Pa. Cons.Stat. Ann. § 9545(b)(1). *See Lines*, 208 F.3d at 162–63.

---

4. The relaxed waiver doctrine was applied both on direct appeal, *see, e.g., Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335, 1343 n. 7 (1995); *Commonwealth v. Crispell*, 530 Pa. 234, 608 A.2d 18, 22 n. 1 (1992), and on appeal from a denial of a request for postconviction relief, *see, e.g., Travaglia*, 661 A.2d at 356 n. 6; *Commonwealth v. Banks*, 656 A.2d at 470 n. 7.

5. There are three exceptions to the one-year filing requirement enumerated in § 9545(b)(1), none of which applies here. They include situations where a prisoner can prove that: (1) "the failure to raise the claim previously was the result of interference by government officials . . ."; (2) "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"; and (3) "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa. Cons.Stat. Ann. § 9545(b)(1).

The respondents contend that Whitney could have filed a second PCRA petition, advancing any and all additional claims, during the 60 day interval between the enactment and effective date of the PCRA amendments, that is, between November 17, 1995 and January 16, 1996. We disagree. During that time frame, Whitney's first PCRA petition was pending before the Pennsylvania Supreme Court. Indeed, it was before that court from early 1995 until February 26, 1998. Under Pennsylvania law, he was not permitted to file a second PCRA petition while his first was still pending. *See Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 588 (2000).[6] Consequently, it would have been fruitless to file a second PCRA petition at any time between November 17, 1995, and January 16, 1996.[7]

Respondents refer us to *Banks v. Horn*, 49 F.Supp.2d 400 (M.D.Pa.1999) in support of their position that the PCRA time bar is an adequate state ground. That case is inapposite. Banks, unlike Whitney, did not have a PCRA petition pending at any time between November 17, 1995 and January 16, 1996. As a result, Banks had the opportunity to file a second petition during the 60 days between the enactment of the PCRA amendments and their effective date.[8] The *Banks* court emphasized the fact that "time [was] permitted to cure the default." *Banks v. Horn*, 49 F.Supp.2d at 405 n. 2.

In *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), the United States Supreme Court found a Georgia procedural rule to be an inadequate state ground to prevent it from reaching the merits of a petitioner's constitutional claim. In October, 1984, criminal defendant James Ford filed a pre-trial motion to prevent the prosecutor from using peremptory challenges to exclude black venire persons from the petit jury in his case. The motion was denied. Ford was convicted by the jury of murder and sentenced to death. On direct appeal, the Supreme Court of Georgia determined that he failed to establish that there was error in the prosecutor's use of peremptory challenges, and it affirmed his conviction. *See Ford*, 498 U.S. at 417, 111 S.Ct. 850.

The United States Supreme Court granted Ford's petition for certiorari in 1987. It vacated and remanded his case for further consideration in light of its recent decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which it held that a criminal defendant could make out a prima facie case of an equal protection violation if he could demonstrate that the prosecutor used peremptory challenges to exclude members of defendant's race. *See id.*

---

**6.** We recognize that this is a recent decision. However, *Lark* did not overturn any contrary precedent, and the respondents do not dispute that Whitney could not file a second PCRA petition while his first was pending.

**7.** Respondents took the position at oral argument that, upon learning in November, 1995 that the legislature had enacted a one-year PCRA time bar, Whitney should have moved for a remand of his first petition so that he could amend it and include all of his claims. Respondents cited no authority to support their contention that such a request would

have been successful, and we have found none.

**8.** The Pennsylvania Supreme Court affirmed the denial of Banks' first PCRA petition on March 27, 1995, and the United States Supreme Court denied his petition for certiorari on October 2, 1995. *See Commonwealth v. Banks*, 540 Pa. 143, 656 A.2d 467(Pa.), *cert. denied*, 516 U.S. 835, 116 S.Ct. 113, 133 L.Ed.2d 65 (1995). Banks did not file a subsequent PCRA petition until January 14, 1997. *See Commonwealth v. Banks*, 556 Pa. 1, 726 A.2d 374, 374–75 (1999).

On remand, the Supreme Court of Georgia concluded that Ford's equal protection claim was procedurally barred as out of time. *See id.* at 417–18, 111 S.Ct. 850. The state court applied a new rule, announced by it for the first time in 1987, several years after Ford's trial, that a *Batson* claim must be raised after the petit jury has been selected but before the jurors are sworn in to try the case. *See id.* at 418, 111 S.Ct. 850. Since Ford had failed to meet those time requirements, it concluded that he had not properly preserved his claim for review on appeal.

The United States Supreme Court granted certiorari again, this time in order to determine whether the timeliness rule the Georgia Supreme Court had applied was an adequate state ground that would prevent it from addressing Ford's *Batson* claim. The Court held that it was not. *See id.* at 423, 424, 111 S.Ct. 850. While it was a proper exercise of state power to establish a rule governing the timeliness of objections in a state criminal trial, the rule could not be applied to prevent the Court's review of Ford's claim. *See id.* The Court declared that Georgia's procedural rule did "not even remotely satisfy the requirement" that it must be " 'firmly established and regularly followed' by the time as of which it is to be applied;" that is, at the time of Ford's trial. *Id.* at 424, 111 S.Ct. 850.

■ Up until January 16, 1996, the relaxed waiver rule in capital cases and the absence of time limitations on filing successive PCRA petitions were the firmly established and regularly followed practices in Pennsylvania. Up until at least November 17, 1995, when the PCRA amendments were enacted, Whitney justifiably relied on these practices. Under those practices, all his claims did not have to be raised in one PCRA petition. The 60 day window between passage and the effective date of the PCRA amendments was of no help to Whitney because his first petition was pending during that period and admittedly Pennsylvania law did not allow him to pursue a second petition while the first petition was pending. *See Lark,* 746 A.2d at 588. As a result of the 1996 PCRA amendments, the legal landscape changed dramatically. Whitney suddenly lost all opportunity to file a successive petition with "waived" claims. What occurred here was analogous to reducing a statute of limitations from four years to two years in the third year after the cause of action arose.

The Pennsylvania procedural bar to Whitney's raising the claims he asserts here is not an adequate state ground precluding our review of those claims. Not giving him a grace period before the revised PCRA took effect runs afoul of the fair notice requirement enunciated by the Supreme Court in *Ford* and by our Court of Appeals in *Cabrera.*

### III.

Whitney argues that he is entitled to a new trial because the Court of Common Pleas gave a constitutionally invalid voluntary intoxication instruction that relieved the Commonwealth of its burden to prove beyond a reasonable doubt that he had the specific intent to kill. He asserts that the instruction violated his right, long-recognized under the Due Process Clause of the Fourteenth Amendment, to require the Commonwealth to prove beyond a reasonable doubt every element of a criminal charge against him. *See In re Winship,* 397 U.S. 358, 361–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). He also claims that his trial counsel's failure to object to the erroneous instruction violated his constitutional right to the effective assistance of counsel under the Sixth Amendment as

incorporated into the Fourteenth Amendment.

■ Trial counsel did not object to the voluntary intoxication charge when it was read to the jury, and he failed to raise the issue on direct appeal. Nor was it included in Whitney's first and only PCRA petition.[9] For the reasons set forth above, we are not barred from reaching the merits of Whitney's ineffective assistance claims.[10]

At trial, intoxication was a major issue. Whitney produced several witnesses who testified that he had been drinking and had become inebriated at a party before the murder. *See Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1155 (1986). The woman whose apartment Whitney had broken into minutes before he broke into Mr. Taha's apartment also testified that Whitney appeared "woozy" and that his speech was "funny." *See id.* On the other hand, the Commonwealth presented evidence that Whitney had "sufficient command of his body" and "capacity of mind" to form the specific intent to kill. *Id.*

■ In Pennsylvania, specific intent to kill is an element of the offense of first degree murder. *See* 18 Pa. Cons.Stat. Ann. § 2502; *Smith v. Horn*, 120 F.3d 400, 408 (3d Cir.1997). Evidence of an accused's intoxication is highly relevant in a

first degree murder case because it may have the effect of diminishing his intent and thus reducing what would otherwise be first degree murder to a lower degree of murder. The Pennsylvania criminal code provides:

> Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa. Cons.Stat. Ann. § 308. When a defendant presents evidence that his voluntary intoxication prevented him from forming the intent to kill, the Commonwealth still retains its burden of proving beyond a reasonable doubt that despite any intoxication the defendant had the requisite intent for a first degree murder conviction. *See Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714, 720 (1984).

■ The trial court instructed the jury on voluntary intoxication in relevant part as follows:

> With one exception, which I will define later, voluntary intoxication is not a

9. On direct appeal, the Pennsylvania Supreme Court addressed the weight and sufficiency of the evidence of intent to commit first degree murder and diminished capacity due to intoxication. *See Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1154–56 (1986). In his PCRA appeal, petitioner claimed that trial counsel was ineffective for failing to call him to testify about his intoxicated condition on the evening of the murder. *See Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 477 (1998). The Pennsylvania Supreme Court did not address and petitioner did not raise, on direct review or on PCRA appeal, the propriety of the intoxication

charge or whether trial counsel was ineffective for failing to object to that charge.

10. Because these claims were not "adjudicated on the merits in State court proceedings," we are not bound by the restrictive standard of review set forth in 28 U.S.C. § 2254(d), enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996. Section 2254(d) provides that we may not grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of" clearly established federal law or "was based on an unreasonable determination of the facts."

defense to a criminal charge. A person who uses intoxicants cannot become so drunk that he is, for that reason, legally incapable of committing a crime. . . .

However, as I indicated a few moments ago, the general rule is that voluntary intoxication is not a defense to a criminal charge. However, there is one modifying circumstance to that rule which says that the voluntary use of intoxicants does not preclude a person from being legally capable of committing a crime. The qualification is where the crime which is charged is first degree murder.

In connection with that crime, the defendant is permitted to claim, as a defense, that he was so drunk at the time of the killing that he did not possess the specific intent to kill required for first degree murder. The Commonwealth has the burden of disproving this defense.

Thus, you cannot find the defendant guilty of first degree murder unless you are satisfied beyond a reasonable doubt that the defendant was not so intoxicated at the time that he was incapable of judging his acts and their consequences or of being incapable of forming a willful, deliberate and premeditated design to kill.

Now, let me repeat that again for you.

The Commonwealth has the burden of disproving this defense.

Thus, *you cannot find the defendant guilty of first degree murder unless you are satisfied beyond a reasonable doubt that the defendant was so intoxicated at the time that he was incapable of judging his acts and their consequences or incapable of forming a willful, deliberate and premeditated design to kill.*

Trial transcript from May 3, 1982 at 509–12 (emphasis added). The underscored portion of these instructions is patently wrong. The sentence is missing the crucial word "not" before "so intoxicated ." The jury essentially was instructed that in order to find Whitney guilty of first degree murder, it had to find that he was so inebriated that he lacked specific intent to kill. The respondents concede that this part of the charge was error.

Respondents argue that the error was not prejudicial because, at an earlier point, the court correctly instructed the jury about voluntary intoxication and specific intent. Although it is true that the court properly charged the jury initially, we do not think the presence of one proper instruction negates the prejudicial effect of the improper instruction on a critical element of first degree murder, the crime upon which the death sentence was based. The error was compounded by the fact that it came *after* the correct charge, and the judge stated that the later charge, which was incorrect, was a repetition of what he had said earlier.

In this case, there was enough evidence of intoxication to make Whitney's state of mind a question for the jury. *See Whitney*, 512 A.2d at 1155. We have no way of knowing whether one or more jurors found he was too drunk to form the specific intent to kill and then relied on the incorrect voluntary intoxication instruction in finding him guilty of first degree murder, or whether they all believed that he had the specific intent to kill and then relied upon the earlier correct instruction in convicting him.

In *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the United States Supreme Court was faced with a situation in which the trial court's jury instructions were open to both a permissible and an impermissible interpretation. Acknowledging that both constructions were plausible, the Court recognized that there was "at least a substantial risk

that the jury was misinformed." *Mills,* 486 U.S. at 381, 108 S.Ct. 1860. The Court explained:

> With respect to findings of guilt on criminal charges, the Court consistently has followed the rule that the jury's verdict must be set aside if it could be supported on one ground but not on another, and the reviewing court was uncertain which of the two grounds was relied upon by the jury in reaching the verdict .... In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds .... Unless we can rule out the substantial possibility that the jury may have rested its verdict on the "improper" ground, we must remand for resentencing.

*Id.* at 376–77, 108 S.Ct. 1860 (citations omitted).

In the case at bar, we cannot rule out "the substantial possibility" that the jury rested its first degree murder conviction on the unconstitutional instruction. *Id.* We lack the "even greater certainty" that is necessary in a capital case to conclude that the conviction and sentence rest on proper grounds. *Id.*

 Whitney claims that his trial counsel provided ineffective assistance under the Sixth and Fourteenth Amendments when he failed to object to the faulty voluntary intoxication charge. Such a claim is governed by the standards enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must prove two elements: (1) counsel's performance "fell below an objective standard of reasonableness", that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) the deficient representation prejudiced petitioner, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. In order to establish prejudice, Whitney must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

It was a plain and serious deficiency in performance for trial counsel not to object to a jury instruction that informed the jury that it could only find the defendant guilty of first degree murder if it concluded he lacked the specific intent to kill. There is no plausible strategy for acquiescing in such an instruction. Whitney has established the first element of his ineffectiveness claim.

Given that there was sufficient evidence of Whitney's intoxication to make his state of mind a question for the jury, and given that the judge improperly instructed the jury on the law of specific intent and voluntary intoxication, there is "a reasonable probability" that, but for counsel's omission, "the result of the proceeding would have been different." *Id.* Had counsel objected at trial, the court could easily have corrected the error and made the proper instruction clear. There is a reasonable probability that, if the error in the charge had been corrected, at least one juror would not have voted to convict petitioner of first degree murder. Our confidence in the conviction and sentence has been undermined by the seriously deficient representation of trial counsel. We conclude that Whitney has successfully established his claim of ineffective assistance of counsel under the Sixth and Fourteenth Amendments. As a result, we need not reach his multiple other claims.

IV.

The amended petition of Raymond Whitney for a writ of habeas corpus under 28 U.S.C. § 2254 will be conditionally granted in accordance with the accompanying order. His death sentence will be vacated. He is entitled to a new trial on the charge of first degree murder.

ORDER

AND NOW, this 7th day of June, 2000, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the amended petition of Raymond Whitney for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is conditionally GRANTED;

(2) petitioner Raymond Whitney shall be released from custody pertaining to his conviction and sentence of death on the charge of murder in the first degree, unless within 180 days he is retried on the first degree murder charge; and

(3) this Order is stayed pending any appeal.